**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Navajo Nation, | No. CV-03-00507-PCT-GMS |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| United States Department of the Interior; et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Navajo Nation's Motion for Leave to File Third Amended Complaint (Doc. 335). Defendant and Defendant-Intervenors oppose the Motion. For the following reasons the Motion is denied.

**BACKGROUND**

The Navajo Nation sued the Department of the Interior in 2003, seeking to strike down various regulations governing the use of water from the Colorado River in its Lower Basin ("the River"). The Nation also alleged that the United States breached its duties to the Nation as trustee of the Navajo Reservation. After several entities intervened in the case, it was stayed to allow for settlement negotiations which ultimately proved unsuccessful. The litigation resumed, and this Court dismissed the Nation's claims.

The Ninth Circuit affirmed in part and reversed in part. It remanded the breach of trust claim with instructions to "fully consider the Nation's breach of trust claim in the first instance, after entertaining any request to amend the claim more fully to flesh it out." *Navajo Nation v. Dept. of Interior*, 876 F.3d 1144, 1173 (9th Cir. 2017). The Nation now moves for leave to "flesh out" the breach of trust claim and file a Third Amended

Complaint ("TAC" or "Proposed TAC").

**DISCUSSION**

**I.      Legal Standard**

If a plaintiff wants to amend its complaint more than twenty-one days after the complaint is served, it needs the court's permission.  Courts freely give that permission "when justice so requires."  FED. R. CIV. P. 15(a)(2).  This policy favoring amendments is generally "applied with extreme liberality," *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987), but that does not mean that leave to amend is automatically granted.  If a court finds that there has been a sufficient showing of (1) undue delay; (2) bad faith or dilatory motives on the part of the movant; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; or (5) futility of the proposed amendment, the court should deny the motion.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  District courts have particularly broad discretion to deny leave to amend if the plaintiff has already amended its complaint.  *Sisseton-Wahpeton Sioux Tribe of Lake Traverse Indian Reservation, North Dakota and South Dakota v. United States*, 90 F.3d 351, 355 (9th Cir. 1996) (quoting *Allen v. City of Beverly Hills*, 911 F.2d 376, 373 (9th Cir. 1990)).

**II.     Analysis**

The Proposed Third Amended Complaint raises two main issues.  First, whether the Supreme Court's retention of jurisdiction in *Arizona v. California*, 547 U.S. 150, 166–67 (2006), deprives this court of jurisdiction to entertain the breach of trust claim, and, if it does not whether the proposed amendments should be allowed.   Language throughout the TAC and specifically the Nation's two prayers for relief demonstrate that the relief sought in the Proposed TAC would require this Court to determine the Nation's rights to water from the River.  Jurisdiction over that issue has been reserved by the Supreme Court in *Arizona v. California,* thus this Court lacks jurisdiction to entertain the Proposed TAC.

**A.      Jurisdiction**

In *Arizona v. California*, the Supreme Court determined the rights of various entities to water from the River.  Subsequent to its initial decree in the case, the Court declared that

absent some showing of unforeseeable change in circumstances, the rights to the water that had been adjudicated would not be altered. *See Arizona v. California*, 460 U.S. 605, 619–27 (1983)[1].

The Nation and other tribes were represented in *Arizona v. California* by the United States as trustee. *See Navajo Nation v. Department of the Interior*, 876 F.3d 1144, 1154 (9th Cir. 2017). The United States did not however present claims to water from the River for all of the tribes, including the Nation. Rather, the United States put forward the Nation's claim to water from the Little Colorado River, a tributary of the Colorado River. *See* Findings of Fact and Conclusions of Law Proposed by the United States of America at 58, *Arizona v. California*, 373 U.S. 546 (1963). The Court narrowed the scope of the *Arizona v. California* litigation to include only claims to the mainstream of the River, so the Nation's Little Colorado River claim was not considered. *Arizona v. California*, 373 U.S. 546, 590–91 (1963). When the Nation attempted to intervene on its own behalf in the *Arizona* litigation, the Court denied the motion. *Arizona v. California*, 368 U.S. 917 (1961).

Thus the Court never addressed any rights the Nation may or may not have to the mainstream of the River because the United States did not bring that claim, nor was the Nation allowed to separately intervene to bring it. Yet the Court noted later that tribes represented by the United States in *Arizona v. California* are bound by the Court's decisions in the case, and so "the absence of the Indian Tribes in the prior proceedings in this case does not dictate or authorize relitigation of their reserved rights." *Arizona*, 460 U.S. at 626–27.

If the Nation wishes to assert rights to the River, it is clear from the latest decree in *Arizona v. California* that such a determination is off-limits to any lower court. In its 2006 Decree, the Supreme Court "retain[ed] jurisdiction of this suit for the purpose of *any* order,

---

[1] The Court has made minor adjustments to its 1964 Decree. But the Court has clarified that the provision of the 1964 Decree allowing amendment was "mainly a safety net added to retain jurisdiction and to ensure that [it] had not, by virtue of res judicata, precluded [itself] from adjusting the Decree in light of unforeseeable changes in circumstances." 460 U.S. at 622.

1  direction, or modification of the decree, or *any* supplementary decree, that may *at any time*

2  be deemed proper *in relation to the subject matter in controversy*." *Arizona v. California*,

3  547 U.S. 150, 166–67 (2006) (emphasis added).  That is broad language.  And it deprives

4  this court of jurisdiction over any claim that requires any determination of rights to the

5  River.

6  <center>**1.     The Nation's Proposed TAC**</center>

7          In its Proposed TAC, the Nation added allegations regarding its breach of trust

8  claim.  It also added two new claims: a breach of treaty claim and a failure to consult claim.

9  All the claims require this Court to determine that the Nation has rights to the River.

10  <center>**a.     Breach of Trust**</center>

11          The breach of trust claim in the Proposed TAC would require this Court to determine

12  the Nation's rights to the River.   That determination is beyond this Court's authority

13  because of the Supreme Court's reserved jurisdiction in *Arizona v. California*.

14          The Proposed TAC contains a multitude of statements referring to the Nation's

15  "interests in . . . a water supply from the Lower Basin of the Colorado River."  (Doc. 335-

16  2 at 3).  For example, the Nation alleges that the United States has failed in its trust

17  responsibilities by

18
19
20
21
22
23
> fail[ing] to determine the water required from the Lower Basin of the Colorado River to make the Navajo Reservation a permanent homeland for the Navajo people; fail[ing] to protect the sovereign interests of the Navajo Nation by securing an adequate water supply from the Lower Basin of the Colorado River to meet those homeland purposes; failing to consult with the Navajo Nation prior to making management decisions that affect Navajo trust resources; and managing the Colorado River through decisions that inure to the benefit of others, including the Intervenor-Defendants, while compromising the interests of the Navajo Nation.

24  (*Id.*).

25          The Nation's two prayers for relief in the Proposed TAC confirm that the Nation

26  seeks relief that would require a declaration of rights to water from the River.  The first

27  prayer for relief requests this Court to declare that the United States' trustee obligations

28  require it to

<center>- 4 -</center>

> (1) determine the extent to which the Nation requires water from the mainstream of the Colorado River in the Lower Basin to enable its Reservation to serve as a permanent homeland for the Navajo Nation . . . ; (2) develop a plan to secure the water needed; and (3) manage the Colorado River in a manner that does not interfere with the plan to secure the water from the Colorado River needed by the Navajo Nation.

(*Id.* at 53).

The second prayer for relief asks for an injunction from this Court ordering the United States to fulfil the same steps outlined in the first prayer for relief (plus one more). The second prayer asks this court to require the government

> (a) to determine the extent to which the Navajo Nation requires water from the mainstream of the Colorado River in the Lower Basin to enable its Reservation to serve as a permanent homeland for the Navajo Nation and its members; (b) to develop a plan to secure the water as needed; (c) to manage the Colorado River in a manner that does not interfere with the plan to secure the water from the Colorado River needed by the Navajo Nation; and (d) to require the Federal Defendants to analyze their actions in adopting the Shortage and Surplus Guidelines, and other management decisions identified herein, in light of the plan to secure the water from the Colorado River and adopt appropriate mitigation measures to offset any adverse effects from those actions.[2]

(*Id.* at 54).

The Nation's Proposed TAC thus requires a determination that the Nation has rights to the River. At the very least it would require that this Court determine that the Nation *may* have rights to the river, and thus the United States *may* have breached its trust duties. But a request for a determination that the United States may have breached its trust to the Nation does not constitute a case or controversy under the Constitution.

At oral argument, the Nation repeatedly asserted that it is in fact bringing a more general claim—a claim not requiring determination of rights to the River, but rather a claim based on the Nation's general need for water to make the Reservation inhabitable.[3] For

---

[2] The Nation apparently failed to finish writing its second prayer for relief in the Proposed TAC, and supplies the rest of the sentence in its Reply. (Doc. 346 at 2 n.2).

[3] The Ninth Circuit recognized the distinction between "the unmet *needs* of the Navajo Nation . . . for water from the Lower Basin" and "the unquantified rights of the Navajo Nation to the waters of the Lower Basin of the Colorado River." *Navajo Nation*,

1    example, the Nation alleges that "[t]he Department [of the Interior] has a fiduciary

2    responsibility to the Navajo Nation to preserve, protect, and make productive the Nation's

3    trust resources so that the Navajo Reservation is a viable permanent homeland."  (Doc.

4    335-2 at 4).  The Nation also notes that by creating the Navajo Reservation, the United

5    States also by implication reserved "a sufficient amount of water . . . for the benefit of the

6    Navajo Nation to carry out the purposes for which the [Navajo] Reservation was created,

7    specifically to make the Reservation a livable homeland for the Nation's present and future

8    generations."  (Doc. 335-2 at 7); *see Cappaert v. United States*, 426 U.S. 128, 138 (1976);

9    *Winters v. United States*, 207 U.S. 564 (1908).

10          At this point, however, this Court need not decide whether the Nation's rights under

11   *Winters* would give rise to a trust claim if the Tribe did not take the further step of requiring

12   the Court to determine that the Trustee had an obligation to satisfy such rights out of the

13   mainstream of the Colorado River.  In the past, however, the United States has taken the

14   position that *Winters* water rights can be held in trust for a Tribe. *See Fort Mojave Indian*

15   *Tribe v. United States*, 23 Cl. Ct. 417, 425 (1991).  The Court need not decide such matters

16   here, however, because the TAC as written requires the Court to determine whether the

17   Nation has rights in the Colorado River.

18                        **b.       Breach of Treaty**

19         The Nation's breach of treaty claim is futile for the same reason—the relief the

20   Nation seeks under the claim asks this Court to find that the Nation has rights to the River.

21   The Nation alleges that the United States breached two treaties made with the Navajo

22   people—the 1849 peace treaty, *Treaty with the Navaho, 1849*, Sept. 9, 1849, 9 Stat. 974,

23   and a treaty signed in 1868, *Treaty with the Navaho, 1868*, June 1, 1868, 15 Stat. 667.

24   (Doc. 335-2 at 49).  The Nation alleges that the United States breached its duties to the

25   Nation under those treaties by "failing to determine the extent and quantity of the rights of

26   _____

27   876 F.3d at 1161.  The unquantified rights arise under *Winters*, while the "need" is "a
     freestanding interest in an adequate water supply for the Nation that exists notwithstanding
28   the lack of a decreed right to water."  *Id.*  The Proposed TAC and its three claims focus
     primarily on the unquantified rights and would require a declaration that those rights are in
     the River.

the Navajo Nation to use the waters of the Colorado River." (Doc. 335-2 at 49). Proving this allegation would require that the United States has a duty to secure water from the River for the Nation. And since neither of the treaties specifically mentions water from the Colorado River, the only way the United States would have that specific duty is if the Nation had rights to the water. The Nation argues that this claim would not require a determination regarding rights to the River because the crux of the claim is the United States' failure to act affirmatively regarding the Nation's interest in sufficient water. (*See* Doc. 346 at 11). But that broader claim is not what the nation alleges—the way the Proposed TAC is written, this Court would be required to determine that the Nation has rights specific to the Colorado River before it could conclude that the United States breached its treaty duties to the Nation by having failed to secure those rights.

### c. Failure to Consult

The Nation's failure to consult claim fails for the same reason, and at any rate, the Nation abandoned this claim at oral argument. The Nation apparently based this claim on Executive Order No. 13,175, 65 Fed. Reg. 67,249 (Nov. 6, 2000). (Doc. 335-2 at 52). That order requires "[e]ach agency [to] have an accountable process to ensure meaningful and timely input by tribal officials in the development of regulatory policies that have tribal implications." 65 Fed. Reg. at 67250. The Nation alleges that the United States did not consult with the Nation prior to taking various administrative actions regulating the River. (Doc. 335-2 at 52). This allegedly violated the United States' duty to consult with the Nation "in the development of Federal policies that have tribal implications." Executive Order 13,175 defines "policies that have tribal implications" as "regulations, legislative comments or proposed legislation, and other policy statements or actions that have *substantial direct effects* on one or more Indian tribes." 65 Fed. Reg. at 67,249 (emphasis added).

But the "administrative actions complained of" all relate to the regulation of the Colorado River. For these administrative actions to have any "substantial direct effects"

1    on the Nation, the Court would need to determine that the Nation had rights to the River.[4]

2    *Cf. Navajo Nation*, 876 F.3d at 1162 ("The Guidelines do not act directly upon the Nation's

3    unquantified water rights, nor could they."). Since the Nation has never had any such rights

4    adjudicated, the "administrative decisions complained of" did not have "direct effects" on

5    the Nation. Thus the United States did not have a duty under Executive Order 13,175 to

6    consult with the Nation before implementing the Guidelines. To prevail on this claim—

7    which would require the Nation to show that the actions had "direct effects" on it—the

8    Nation would require something that is beyond this Court's jurisdiction to declare: rights

9    to the River.

10   And the failure to consult claim is futile for a second reason: Executive Order

11   13,175 does not create judicially enforceable rights. "This order is intended only to

12   improve the internal management of the executive branch, and is not intended to create any

13   right, benefit, or trust responsibility, substantive or procedural, enforceable at law by a

14   party against the United States, its agencies, or any person." 65 Fed. Reg. at 67,252. *See*

15   *Dettling v. U.S.*, 948 F.Supp.2d 1116, 1125 (D. Haw. 2013) ("The Executive Orders . . .

16   explicitly state that they create no legally enforceable right or benefit. . . . Thus, Plaintiffs

17   had no legal right to fish in the Reserve . . . and therefore suffered no injury in fact."); *Chen*

18   *Zhou Chai v. Carroll*, 48 F.3d 1331, 1339 (4th Cir. 1995) ("[A]n executive order is

19   privately enforceable only if it was intended to create a private cause of action. . . . The

20   plain language of the Executive Order indicates that it was an internal directive.").

21   For all these reasons, the breach of trust, breach of treaty, and failure to consult

22   claims as pleaded in the Proposed TAC are futile.

23   / / /

24   / / /

25

26   [4] Each of the actions objected to has to do with actions taken by the Federal
     Defendants regarding the regulation and use of water from the River. (Doc. 335-2 at 41–
27   43). Indeed the Nation acknowledges this by titling the relevant section of the Proposed
     TAC "The Federal Defendants' On-going Management Efforts Continue to Ignore the
28   Needs of the Navajo Nation for Water from the Colorado River in the Lower Basin." (Doc.
     335-2 at 41).

1

## CONCLUSION

2    **IT IS THEREFORE ORDERED** that Plaintiff Navajo Nation's Motion for Leave

3  to File Third Amended Complaint (Doc. 335) is **DENIED**.

4    **IT IS FURTHER ORDERED** that Plaintiff Navajo Nation will be given one last

5  chance to file an amended complaint asserting a breach of trust claim consistent with this

6  Order.  It shall file such amendment, if any, **within thirty (30) days** of the date of this

7  Order.

8    Dated this 11th day of December, 2018.

9

10    G. Murray Snow
11    Chief United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28